Good morning, Your Honors. In this case, the immigration judge not only reached the wrong decision for the wrong reasons, he looked at the wrong issues. The real issue in this case is whether Petitioner suffered persecution in Apasia, Georgia. And if he did, then it's irrelevant whether or not he suffered persecution in Russia or whether there is a so-called safe haven in Russia. So let's look at how we can determine whether he suffered persecution in Apasia, Georgia. Petitioner testified, well, first of all, the judge should have looked at the three-pronged test laid out by this court in Estrada and in Wang to see whether or not Petitioner's testimony was credible. He should have looked to see, which he didn't, whether Petitioner testified consistently internally and gave facts that could raise the inference of persecution. He did. He talked about the persecution that he suffered from 1990 to 1994 where he lost his life, where his life was continually threatened. I'm really surprised at the position you're taking. After he was, let's say he was persecuted in Georgia, didn't he resettle in Russia? Well, first of all, the government has never raised the issue of firm resettlement, Your Honor. But under the issue of firm resettlement never been raised here. But if it had been raised, Your Honor, no, firm resettlement can't be found under the regulations 8 CFR 208.15 where the conditions of residence were so substantially and consciously restricted by the authority of that country that Petitioner couldn't reasonably live there. Petitioner has shown by substantial evidence that he was persecuted also in Russia. And so... But that's another issue. You just finished telling us that we shouldn't consider that, that the only issue is persecution in Georgia. And he moved from Georgia in 1994, if I remember the date correctly, and lived for some years in Sochi. And then he had an interior passport to go live in Rostov, where he never lived, which he never went to. We don't know if he'll be persecuted there or not, but he accepted the testimony. He said he was persecuted in Sochi by the Cossacks. But why can't the persecution in Georgia be discounted because of the resettlement in Russia? Well, I ask you to look at this Court's case, which Judge Hawkins participated in, Andrazian v. INF, and the government's, I'm sorry, and the CFR, 8 CFR 240.11C1, 240.33A, and 240.49C2. It makes it clear, that case makes it clear, and so do the regulations, that if a party faces persecution in a particular country to which he can be deported, then he's met his burden, and he cannot be deported to that country or any other country. And this case is very similar to Andrazian, where the petitioner also... The I.J. couldn't have found that resettlement occurred in Russia because he was persecuted in Russia? Is that what you're saying? No. I'm saying that, first of all, under Andrazian, if it's found that he's persecuted in one of the countries to which he can be deported, that's the end of the issue. He doesn't have to show that in the next country he went, that he was persecuted. And that's clearly stated in Andrazian. He doesn't have to show that he was persecuted in Russia. The issue of firm resettlement was also raised in Andrazian. It was not raised here, Your Honor. It has never been raised. So I don't think that this case can be decided on the issue of firm resettlement. But if it had been raised, the regulations say, no, you can't say someone is firmly resettled in a country where he's been persecuted, or even solely where his stay there is consciously restricted. Even the record on page 78, the judge comments that he was like an illegal alien in most of Russia, where he couldn't, and as he testified, he had to hide all the time. His family stayed in the house. They couldn't send the children to school. They couldn't work in most of Russia. And the only place they could work was in Rostov, where they were afraid to go, where the Cossacks also were in power.  They were in Rostov for four years. They were in Sochi for a year and a half. They fled there after he was beaten, kept in custody for a month in hospitalized, unconscious, fled there, and they stayed in Moscow only long enough to gather the money to come here. And during that time, they were in hiding. They couldn't work. They couldn't send their children to school. They were afraid to go on the street, because if they were arrested, they would have been deported. And they testified, and the wife testified. He was working off the books. He was getting his money together to come here. That doesn't mean he was firmly resettled. Not under the regulations. He couldn't be firmly resettled. And that's why I think the government never raised that issue, Your Honor, because under the regulations, he couldn't be found firmly resettled. So the judge tried to get in the back door, and he said, oh, he has a safe haven in Rostov. Well, there is no concept in the immigration law of safe haven. That's not any concept that you can relocate someone. You could say Florida, but he couldn't relocate him there. And there's no evidence in the record. See, if we do have to look at whether he was persecuted in Russia, and I think under Andratheim, we don't have to, but if we do, he did prove that he was persecuted in Sochi through his testimony. The testimony of his two witnesses were totally consistent about the death of his nephew and his beating and the fact that he and his family were persecuted there, and all that. So I think that the real issue here is whether, under Andratheim, whether he was persecuted in Sochi and whether he was persecuted in Russia, then the burden shifts to the government to show that the rest of the country was safe for him. He gets a presumption under the law that the country was not safe for him. Not whether he had a work permit or not doesn't make a country safe. And the government didn't prove that it was safe in other places. But again, Your Honors, I think that the real issue here is whether under Andratheim, he was persecuted in Sochi and whether he was persecuted in Russia, then the burden shifts to the government to show that the rest of the country was safe for him. Not whether he had a work permit or not doesn't make a country safe. And the government didn't prove that it was safe in other places. But again, Your Honors, I think that the real issue here is whether under Andratheim, he was persecuted in Russia and whether he was persecuted in Russia, then the burden shifts to the government to show that the rest of the country was safe for him. Not whether he had a work permit or not doesn't make a country safe. And again, Your Honors, I think that the real issue here is whether under Andratheim, he was persecuted in Russia and whether he was persecuted in Russia, then the burden shifts to the government to show that the rest of the country was safe in other places. And again, Your Honors, I think that the record here, the state department, country profile of 1995, what you find in the record, page 775, distinguishes Aposia from the rest of Georgia. As being especially dangerous and where ethnic cleansing took place both by the Georgians, which is pointed out in the record on page 775, and by the Aposians, pointed out in the record on page 786. It's been, so this petitioner has proved by his credible testimony, which has not been controverted anywhere, and by the testimony of his witnesses and by the country conditions, that he has been persecuted, and that should be in Georgia, and that should be the end of the question. There is no such thing. Yes, interestingly enough, he did, but he did it without looking at the testimony, and he did it on the basis of a document, which I'll call document X, which was purported to be a translation of a document that was never submitted. Which was not put in evidence. Which was not admissible evidence, and which the judge said was not admissible evidence, and Failed to remember the name of the newspaper of which he wrote. He only failed temporarily, Your Honor. Later in the testimony, the next time he was asked, he remembered on the same date, February 20th, he remembered it. And that his wife remembered. No, he remembered it. If you look in No, he said it was Kurung. His wife said it was Krunk. Well, I think that the translator might have made a mistake there, Your Honor. I'm not sure we can be sure. They found the same, Your Honor, and I think it was just spelled differently in the record. It's less of a difference than Chronicle and the Examiner. Yes, and I think even if he temporarily or permanently forgot the name of the newspaper, that doesn't go to the heart of the matter, Your Honor. Ten years ago, he wrote in a newspaper, the court has long recounting horrible things that happened to them, and not necessarily going to remember every single detail. And the remembering of a small detail like that doesn't go to the heart of the matter. And he did remember it later in his testimony. It's not speculation that he will be persecuted if he goes back to Rostov, where he has an interior passport. We have no knowledge of whether he'll be persecuted in Rostov, and we don't need to know, Your Honor. There's no reason to know, because if the issue is whether he's persecuted in Russia, then the fact that he's shown he was persecuted in Sochi, Russia, gives him a presumption that he would be dangerous from anywhere in the country, and the only way that we can overcome that assumption is by evidence by the government that he wouldn't be persecuted in Rostov, and there is no evidence of that, Your Honor. It's not his burden to show that he wouldn't be persecuted there. I'm going to save just a little bit of time for rebuttal. Okay. Thank you, Your Honor. Thank you. We'll hear from the government at this time. Good morning, Your Honors. Nora Oskolich for the Department of Justice, for the record. I would like to open by addressing a procedural issue. I think there's been a lot of documentation submitted to the court for its consideration. We haven't seen it. Counsel did ask if I would object, and government does object to information being submitted to this court for its consideration, which the board didn't consider. The statute requires that the review is limited to what was presented to the board. I have no idea what counsel has presented, but she told me it hadn't been presented to the board or considered. I find the government's argument interesting. I sat in June in a case called CIRCU, C-I-R-C-U, v. Ashcroft, in which there was a hearing. The extant country report was 1997. The record closes the I.J. rules two years later and relies upon a 1999 country report, which is quite different, which was not in evidence. On appeal, they ask for a remand or to supplement the record. They ask for a remand to the I.J. so they can counter the evidence. The BIA refuses, and the government takes the position of making a difference. Well, that's not this case, Your Honor. This case ---- I understand that, but, you know, can ---- is it wrong for me to expect some consistency on this point? No, absolutely not. That if it's the government's position, that if it was not in the record at the time of the hearing, it shouldn't be considered? Well, there's ---- this Court has also taken the position that the board can take judicial notice of more recent country reports than were presented to the immigration judge. I will submit the case. I don't have the name off the top of my head. But that the board is required to consider more recent country reports even if they aren't attached to the appeal. And I will look up that case and submit it later. But in this case, Petitioner hasn't asked the board to consider any new evidence. And from what I understand, the evidence that this board is ---- this Court is being asked to consider was previously available and was never presented to the board. But, again, I'm speculating here. So let's get to the substance, which is we don't get to firm resettlement. Petitioners are being ---- have been ordered removed to Russia. They are Russian citizens. They have Russian passports. They have Russian residence in the city of Rostov. They have permits to live in Rostov. They just chose not to. And there is no evidence that they would be persecuted in Rostov. They just say, well, I don't think it will be safe there because it isn't safe for us anywhere. That's speculation. That's not evidence which compels reversal. May I go back a minute? Is it true that you did not argue firm resettlement? Firm resettlement wasn't an issue. Okay. So if I understand your position, your position is that past persecution in another country doesn't create a presumption because they're going to be returned to Russia as opposed to Georgia. Is that the argument in a nutshell? That's part of it. Yes, Your Honor. Okay. What's the rest? Well, I didn't want to interrupt if you were going to continue. Wasn't there also some evidence that the man was persecuted in Russia and that's why he spent a year and a half in a hospital in Sochi? Oh, it wasn't a year and a half, Your Honor, and that's one of the points that's in question. He lived a year and a half, I believe, in Sochi. Pardon me. He lived a year and a half and he ended up in a hospital because he was beaten by Cossacks? Well, then you get to the issue of credibility. All right. But putting that to one side, if we find that the IJ did not have substantial evidence on which to find adverse credibility, and you take Mr. Milosevic's word for what happened to him in Sochi, a part of Russia, as his Rostov, has he not been persecuted in Russia? Yes, Your Honor. And the immigration judge addressed that point and said even if we are to believe him that he was persecuted in the past, he has not established that there isn't a safe place where he could go. I think I have pulled that page from the record. The point is that happened in Sochi, but it didn't happen in Rostov, which is a large city probably an hour's – well, we don't know how far it is, maybe an hour's drive. From Moscow. From Rostov. A long way from Sochi. I wouldn't say it's a long way, but it's maybe – I don't know. Sochi's a little by sea, right? It's a whole other city. And it's a large city. And there's no evidence that he would be targeted there. It's completely different from Malkonian where he was specifically targeted. His house was burned down. His employees were murdered because they were looking for him, not for any Armenian, but for this Armenian. In this case, there is a basis for the adverse credibility finding because Petitioner – I mean, I agree that you don't have to remember specific instances, but he based his past persecution claim on his writing articles in this newspaper but couldn't remember the name of the newspaper until he came back for the hearing. And we're not talking about later in the testimony. We're talking about a month later. I wouldn't say that Krunk and Kurung are significantly different. I would concede that it is – you know, it's a translation anomaly. But the point is he didn't remember anything that he'd written. He couldn't discuss the articles. He had none. That's okay. He remembered that he wrote on behalf of the Armenian people. Yes. He didn't have the articles. So he knew the substance of what he wrote. He knew the substance. But it gets a little weird here because his wife says, Well, I used to see him writing. I never bothered to read them. Again, you know, we have something that's his claim for the whole family fleeing their country in fear of their lives. And she sees him writing, but, you know, she doesn't know what it says. Your position is that the IJ made a reasoned determination that he could reasonably relocate in Russia. Yes. In Rostov where he had a permit. And based on the evidence. Absolutely, Your Honor. And there was no persecution even when he lived in Moscow. He didn't have a permit to live in Moscow. And then again, his evidence is inconsistent. He says he was fined for working without a permit. And then he says he was never fined for working without a permit. I understand your arguments on credibility. So I'm having a little trouble with part of the legal analysis. And so for just the sake of my question, assume that they're credible. If they had designated Georgia as the country to which they were returned, would your argument about past persecution be the same? Would we say? Are you saying assuming credibility? Right. I mean, well, yeah, yeah. That's what I said. Probably not, Your Honor. If he claims to have suffered past persecution, we're assuming that he's credible. He might, the burden would definitely shift to the government to show that he wouldn't be persecuted. Or, well, if he'd shown past persecution, yes. Did I understand your other argument incorrectly? And I thought your argument was that because they were supposed to be removed to Russia, that any past persecution in Georgia didn't make any difference. It would certainly be considered. But how would that affect their being removed to Russia where they weren't persecuted? Let's say that the IJ said, well, no, we're going to send them to Greece. And you base the decision on saying, well, obviously, past persecution doesn't make any difference because we're sending them to Greece. Is that where we're headed logically on this? No, Your Honor, because he has no relationship to Greece. He's got a Greek passport. No, it was two. That was an incidental finding of the IJ. No, no, no. Yeah, go ahead. He had two entries to Greece in his passport, which he never fully explained. Right. He never said that he had a right to live there. Yeah, all right. So he says, well, you know, the IJ says, well, I'm going to send you to Greece. Well, there would be no basis to send to Greece. In this case, there is a basis to send. They have Russian passports. They are Russian citizens. But he has said, because the IJ has said, from the records you've submitted, it's clear you can freely travel to Greece. So I don't see anything in your testimony about harassment there, so I'm going to send you to Greece. But there is no nexus to Greece and residence. We're getting caught on a side issue from the one I'm really concerned about. The analytical question I'm concerned about is can an IJ ignore past persecution if established in one country by making a decision to send the applicant to another country? Yes. And what's your best case that says that? Well, the fact is, how would the – Okay. I said case. You said fact. Okay. Do you have a case? I'm not prepared for the case right now. I will certainly do a serious Westlaw search after this. But the point is, he is a Russian citizen. He's been ordered to move to Russia. And I do contest what counsel said, that he feared that he would be deported if he were caught working illegally in Moscow. That wasn't what he said, and it wasn't a consequence. He is a Russian citizen with a right to live in Russia. He never applied for a work permit in Moscow. I understand all that. But the legal point I'm interested in, and we have to analyze whether he's established persecution or arrest. And we understand – I mean, at least I understand we have to go down several analytical tracks. But I gather your contention is that an I.J. that has persecution is irrelevant and we cannot apply a presumption if, in fact, the I.J. decides to send the person to another country. Is that the proposition you're arguing? I would think so, Your Honor, because let's say he'd gone to Greece and been persecuted in Greece. How would that affect his claim of fear of being returned to Russia? I mean, he's a visitor in Greece, and frankly, again, we don't know how he obtained Russian citizenship, but the family has Russian passports. They are Russian citizens. They have a right to return. So there is a nexus. The immigration judge was absolutely under the law authorized to consider, will they be persecuted in Russia? Does their past persecution in Georgia, assuming credibility, which the And under the statute, the regs, and just common sense, you can consider it, but only to the extent that it would affect your ability to live unpersecuted in Russia. And that's where they're being returned. I apologize for taking you over your time. Thank you for your argument. Thank you, Your Honor. You have about a half a minute for rebuttal. Thank you, Your Honor. Russia is one of the only countries where having a passport doesn't mean you have a right to live there. And Russia has been trying to relocate all of these people forcibly that are living there. Now, Georgia was designated alternatively as a country to which the petitioner would be deported. And that's under the regulations that I cited, 8 CFR 240.11, 8 CFR 240.33, 8 CFR 240.49. He can't be sent to any other country once he's been persecuted in Georgia. He can't be sent back to Russia? What? You said that Georgia was an alternate designation. It was. It was. Was Russia a designation? If he would be persecuted in any country to which he could be deported under Addressian and under those sites, he can't be deported to any country once that finding is to Georgia or to Russia. Thank you, Your Honor. It's been an honor arguing before you. Thank you very much. Thank you both for your arguments. The case just argued will be submitted. If both counsel would like, why don't we say within 15 days of today's hearing, if you have any cases to cite to us that bear on the issue that Judge Thomas addressed, which is about sending them to another country based on prosecution in another country. I know you've cited one to us in your brief, but if you've got them within 15 days, send us a letter brief just identifying the names of the cases. No argument. Just the names of the cases. Thank you. Thank you both very much. We'll proceed to the next case on the calendar, which is Mahatma Gandhi.
judges: Hawkins, Thomas, Bea